UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL 19 2010 ★

BROOKLYN OFFICE

ORIGINAL
DEF
CIM

-------------------------------------------------------x

LEROY ELLIS,

        Plaintiff,

  -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, and CHRISTOPHER
TRICARICO, in individual capacity.

        Defendants.

**MEMORANDUM AND ORDER**
Case No. 07-CV-2042 (FB) (MDG)

-------------------------------------------------------x

*Appearances:*
*For the Plaintiff:*
AMBROSE W. WOTORSON, JR., ESQ.
26 Court Street, Suite 1811
Brooklyn, NY 11242-1118

NOAH AARON KINIGSTEIN, ESQ.
315 Broadway, Room 200
New York, NY 10007

*For the Defendants:*
ISAAC KLEPFISH, ESQ.
New York City Law Department
Office of Corporate Counsel
100 Church Street
New York, NY 10007

**BLOCK, Senior District Judge:**

      Plaintiff Leroy Ellis, a former teacher in the New York City public-school

system, brings this action against the New York City Department of Education ("DOE")

and Christopher Tricarico, in his individual capacity. He alleges race discrimination and

retaliation in violation of the Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

§§ 1981 and 1983, New York Executive Law §§ 296 *et seq.* ("NYSHRL"), and New York City

Administrative Code §§ 8-107 *et seq.* ("NYCHRL"). Both defendants move for summary

judgment on all claims. For the reasons that follow, the motion is granted.

# FACTUAL OVERVIEW[1]

Ellis, an African-American man, worked as a tenured third-grade teacher at PS 75 in Brooklyn from 1998 to February 28, 2007, when he was terminated. Ellis received a satisfactory annual evaluation for each school term through the summer of 2004. Ellis claims that he was the only black male at PS 75.

At the close of the 2003-2004 school year, PS 75 was experiencing disciplinary problems with its students. In addition, the school's poor performance was on the verge of requiring review by the DOE. Tricarico was hired as principal in 2004.

## A. 2004-2005 School Year

On October 19, 2004, Tricarico met with Ellis to discuss an upcoming observation of one of his lessons. At that meeting, Tricarico asked Ellis to become a "Crisis Intervention Teacher" ("CIT"), a new position Tricarico had created to improve discipline. Ellis declined the offer.

Tricarico claims that he offered Ellis the CIT position because he "was advised by [Assistant Principal José Paulino] that [Ellis] was very good with classroom management and student discipline." Defs.' 56.1 Stmt. ¶ 24. Ellis, by contrast, claims that Tricarico told him he had done so "because you look like you fit that role best." Ellis Dep. 36. In response, Ellis told Tricarico he felt he was being "stereotyp[ed] . . . as a black man," Ellis Aff. ¶ 53; at his deposition, he explained that he took Tricarico's statement to mean

---

[1]The facts are taken from the parties' 56.1 statements and supporting documentation. They are either undisputed or, if disputed, presented in the light most favorable to Ellis.

that a "big, black man . . . would be perfect to work in a lunch room [as] an overpaid security officer." Ellis Dep. 41. Ellis admits that he did not formally grieve Tricarico's comment, but claims that he discussed it with a co-worker and his union representative. The CIT position was eventually filled by Jenna Parker, an African-American woman, the following year. Pl.'s 56.1 Stmt. ¶ 28.

The day after the meeting, Tricarico observed one of Ellis's lessons as previously planned. In a written report dated October 29, 2004, Tricarico set forth five areas for improvement; he gave the lesson an overall rating of "unsatisfactory." Klepfish Decl., Ex. G. Ellis's lessons were evaluated three additional times during the school year, twice by Tricarico and once by Paulino. Paulino rated the lesson he observed "satisfactory," *id.*, Ex. L, while Tricarico rated both lessons he observed "unsatisfactory." *Id.*, Exs. N, Q. Ellis unsuccessfully grieved Tricarico's evaluations.

In addition to formal evaluations, Ellis received several letters from Tricarico during the school year. The letters served to remind Ellis of various school policies in areas such as timeliness of paperwork, student dismissal, scheduling and discipline.

On April 21, 2005, Tricarico met with Ellis to discuss the latter's unexcused absence from work during an important math test. The meeting was memorialized in a May 19, 2005 letter from Tricarico to Ellis, in which Tricarico concluded that Ellis's conduct was "unprofessional," "unconscionable," and "insubordinate." Klepfish Decl., Ex.T. Tricarico docked Ellis a half-day's pay and warned of "further disciplinary action including a[n unsatisfactory] rating and/or termination." *Id.*

On May 11, 2005, Ellis filed a complaint of race discrimination with the DOE's Office of Equal Opportunity ("OEO"), alleging that Tricarico "simply does not feel that a black man is equipped to teach in a school where he is principal." Ellis Aff., Ex. K. In support of his charge, Ellis cited Tricarico's statement that Ellis "fit the [CIT position] best" as evidence of "profiling," and his refusal of the job as the trigger for a "crusade of professional intimidation." *Id.* In particular, Ellis asserted that Tricarico's negative evaluations were "supported by subjective and picky details that ha[d] no bearing on the education of [his] students." *Id.* The OEO denied the complaint on June 13, 2005, finding "no credible evidence presented which would support [Ellis's] allegations of race discrimination." Klepfish Decl., Ex. W.

On June 22, 2005, Tricarico gave Ellis his year-end evaluation for the 2004-2005 school year. Citing his three negative evaluations and Ellis's unexcused absence, Tricario rated Ellis "unsatisfactory" for the year. *See* Klepfish Decl., Ex. Z.

**B. 2005-2006 School Year**

At the beginning of the 2005-2006 school year, Tricarico and Assistant Principal Angelina Alvarez-Rooney gave Ellis several informal recommendations for improving his classroom. On October 6, 2005, Tricarico wrote Ellis to complain that the recommendations had not been implemented; Ellis claims that he had complied.

On October 18, 2005, Tricarico observed one of Ellis's lessons, rating it "satisfactory." Klepfish Decl., Ex. DD. On October 28th, however, Tricarico conducted another observation with Alvarez-Rooney; they jointly gave Ellis an unsatisfactory rating. *Id.*, Ex. EE.

4

On November 14, 2005, Tricarico implemented an improvement plan for Ellis. *See id.*, Ex. GG. Under the plan, Ellis was required to use a particular format for his math and reading lesson plans, to discuss the plans with Alvarez-Rooney and the school's math and reading coaches, and to attend professional development sessions. In addition, the plan called for increased observations of Ellis's lessons. Tricarico claims that Ellis became insubordinate at a meeting to discuss the plan; Ellis denies this.

Ellis continued to receive unsatisfactory ratings throughout the school year, two from Tricarico and one from Alvarez-Rooney. In addition, Ellis did not attend several scheduled meetings, did not submit lesson plans in accordance with his improvement plan, and, on one occasion, refused to teach a class because Tricarico and a DOE representative were observing him. As a result, Ellis received an overall rating of "unsatisfactory" for the 2005-2006 school year. *See* Klepfish Decl., Ex. BBB.

## C. Disciplinary Proceedings and Termination

Because Ellis received unsatisfactory year-end ratings for two consecutive years, DOE's Office of Legal Services ("OLS") brought disciplinary charges pursuant to New York Education Law § 3020-a. *See* Klepfish Decl., Ex. DDD.[2] On November 20, 2006, Ellis was formally charged with conduct unbecoming his position, rendering incompetent and inefficient service, insubordination and neglect of duty. The charges contained 26 specifications, including the evaluations and other incidents described above, along with

---

[2]Section 3020-a outlines the procedures by which a disciplinary action can be brought against tenured teachers, and by which an impartial panel will "adjudicate questions of fact, charges, and penalties." *See Burkybile v. Board of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 312 (2d Cir. 2005).

several others. Ellis was reassigned to administrative duties for the 2006-2007 school year pending the outcome of the proceeding.

Elllis failed to respond to the charges, thereby waiving his right to a hearing. *See* Klepfish Decl., Ex. HHH. OLS represented to the § 3020-a panel that the testimony of Tricarico and Alvarez-Rooney would have established Ellis's incompetence, misconduct and insubordination, and that the documentary evidence would have corroborated their testimony.

Taking OLS's uncontested representations as true, the panel found that Ellis had "provided incompetent and unsatisfactory service" and demonstrated an "unwillingness or inability to improve as a teacher." Klepfish Decl., Ex. HHH. It further found that he had "engaged in acts of misconduct," "repeatedly failed to follow school procedures," and been "insubordinate and unprofessional." *Id.* It concluded that Ellis's conduct rendered him "unfit to perform [his] obligations properly" and constituted "[j]ust cause for termination." *Id.*

Accordingly, Ellis was terminated, effective February 28, 2007. This lawsuit followed.

## DISCUSSION

"Summary judgment should be granted if 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Blanch v. Koons*, 467 F.3d 244, 250 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(c)). There is a genuine dispute as to a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

the "facts must be viewed in the light most favorable to the nonmoving party." *Ricci v. DeStefano*, 129 S. Ct. 2658, 2676 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## A. Title VII

Ellis claims both race discrimination and retaliation under Title VII. The Court addresses each claim in turn.[3]

### 1. Discrimination

Where, as here, there is no direct evidence of discriminatory animus, the Court applies the well-established framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973):

> [A] plaintiff must first establish a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class. If the plaintiff succeeds, a presumption of discrimination arises and the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the adverse decision or action. If the defendant proffers such a reason, the presumption of discrimination created by the prima facie case drops out of the analysis, and the defendant will be entitled to summary judgment unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination. The plaintiff must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination.

---

[3]Because "individuals are not subject to liability under Title VII," *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004), Ellis cannot assert Title VII claims against Tricarico.

*Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005) (citing *McDonnell Douglas*, 411 U.S. at 802-04; other citations and internal quotation marks omitted).

"Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Merely establishing that the employer's proffered reason is false is not enough to satisfy this burden; the plaintiff must show "both that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).

In the final analysis, "[w]hether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Reeves*, 530 U.S. at 148-49. The Second Circuit has held that *Reeves* "clearly mandates a case-by-case approach," *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000), and allows for summary judgment even when the plaintiff has made out a prima facie case and offered some evidence of pretext. *See id.* at 91 (affirming summary judgment because "plaintiff's case is far weaker than was Reeves's.").

With respect to Ellis's prima facie case, elements one and two -- that Ellis is a member of a protected class and minimally qualified to work as a teacher -- are not in

8

dispute. Nor does DOE dispute that Ellis's termination qualifies as an adverse employment action, satisfying the third element.[4]

To support the fourth element, Ellis relies on (1) his uniformly positive year-end evaluations prior to Tricarico's arrival, (2) the numerous criticisms, both formal and informal, leveled at him, many of which he claims were "in violation of established protocol," and (3) Tricarico's statement that Ellis "look[ed] like [he] fit the [CIT] role best."

The first two factors, even if true, are of no consequence because they shed no light on Tricarico's state of mind. Courts routinely -- and sensibly -- hold that differences in matters of judgment do not, *ipso facto*, suggest discriminatory animus. *See, e.g., Missick v. City of New York*, ___ F. Supp. 2d ___, 2010 WL 1655446, at *8 (E.D.N.Y. March 22, 2010) ("The mere fact of past satisfactory performance, followed by negative feedback, is not suggestive of impermissible animus . . . ."); *Orisek v. American Inst. of Aeronautics & Astronautics*, 938 F. Supp. 185, 191 (S.D.N.Y. 1996) ("[A] new manager is allowed to appraise an employee's work according to his or her own expectations, even if those expectations are contrary to a prior manager's expectations."). Similarly, procedural

---

[4]Ellis claims that being offered the CIT position, as well as the numerous observations and unsatisfactory evaluations, were also adverse employment actions. The CIT offer cannot qualify because Ellis rejected it; therefore, it did not cause a "materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). Excessive scrutiny and negative evaluations do not constitute adverse employment actions "in the absence of other negative results such as a decrease in pay or being placed on probation." *Lumhoo v. Home Depot USA*, 229 F. Supp. 2d 121, 150 (E.D.N.Y. 2002) (citing cases). Here, of course, the observations and evaluations contributed, in some sense, to Ellis' termination, a stand-alone adverse employment action; therefore, the Court need not address them separately.

irregularities may be evidence of pretext, *see Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 313 (2d Cir. 1997), but they do not, without more, show that the true motivation for the employer's conduct was race, *see, e.g., Gibbs v. Consolidated Edison Co.*, 714 F. Supp. 85, 92 (S.D.N.Y. 1989) ("While [defendant's] actions may violate the collective bargaining agreement and may treat plaintiff in an unfair manner, nothing before the Court indicates that race or national origin had anything to do with the decision not to promote [plaintiff].").

Tricarico's statement that Ellis "look[ed] like [he] fit the [CIT] role best" presents a closer question. A single stray remark, without more, is generally insufficient to raise an inference of discrimination. *See Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001) ("[T]he stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination."). Moreover, the comment is, on its face, devoid of racial overtones; a jury would have to infer (1) that Ellis's "look" referred, at least in part, to his race (as opposed to his sex, size or any other attribute), and (2) that "fitting the part" meant, not only the Tricarico believed that Ellis would make a good CIT, but that he also believed that Ellis would *not* make a good classroom teacher. Rather than grapple with the issue, the Court will simply assume that a jury could reasonably draw such inferences and, therefore, that Ellis has -- barely -- offered sufficient evidence to make out a prima facie case.

The extensive paper trial of unsatisfactory evaluations and inappropriate behavior supplies no shortage of non-discriminatory reasons for Ellis's termination. Ellis takes issue with the factual underpinnings of some of Tricarico's criticisms, while arguing

that others were too minor to warrant disciplinary action. As noted, evidence undermining the employer's proffered non-discriminatory reasons can be suggestive of pretext. *See Stern*, 131 F.3d at 313 (holding that use of atypical hiring procedures was evidence of pretext).

The Court must also, however, take into account the decision of the § 3020-a panel. The Second Circuit has held that "a decision by an independent tribunal that is not itself subject to a claim of bias" is "highly probative of the absence of discriminatory intent." *Collins v. New York City Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002).[5] Ellis had an opportunity to refute the charges at an evidentiary hearing before the panel -- whose independence and neutrality are not in question -- but chose not to. And the panel's ultimate finding of just cause for the termination vitiates any claim the Tricarico unfairly besieged Ellis with trivial complaints.

Considering the record as a whole, the Court concludes that if Ellis has made out a prima facie case at all, it is too weak to survive the "highly probative" effect of the § 3020-a panel's decision. Thus, no reasonable jury could conclude that Ellis has satisfied his ultimate burden of showing that the stated grounds for his termination were a pretext for unlawful discrimination.

---

[5]The circuit court evaluated the effect of such a decision in the context of the plaintiff's prima facie burden. It recognized, however, that the issue could also be raised "as an attack on a claim of pretext." *Collins*, 305 F.3d at 118 n.1.

## 2. *Retaliation*

Title VII retaliation claims are subject to the same *McDonnell Douglas* burden-shifting framework as discrimination claims. *See Terry v. Ashcroft,* 336 F.3d 128, 140-41 (2d Cir. 2003). The only difference lies in the elements of the prima facie case; to establish a prima facie case of retaliation, the plaintiff must demonstrate that (1) he engaged in a statutorily protected activity; (2) his employer was aware of this activity; (3) he suffered an adverse employment action; and (4) there is a "causal connection" between the protected activity and the adverse employment action. *See Kessler v. Westchester County Dep't of Soc. Servs.,* 461 F.3d 199, 205 (2d Cir. 2006).

Ellis premises his retaliation claim on two instances of protected activity: (1) his statement to Tricarico that by offering him the CIT position, Tricarico "was stereotyping [him] as a black man"; and (2) his formal complaint to the OEO. With respect to the latter, however, the record is clear that Tricarico's post-complaint conduct was consistent with, and a continuation of, a preexisting pattern. That being the case, Ellis cannot make out a prima facie case of retaliation based on the OEO complaint. *See Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 272 (2001) ("[Employers'] proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."); *Slattery v. Swiss Reins. Am. Corp.,* 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."). Thus, the Court focuses on the "stereotyping" statement.

The Court concludes that that aspect of Ellis' retaliation claim must fail at the first step of the prima facie case. "To establish that his activity is protected under Title VII, a plaintiff need not prove the merit of his underlying discrimination complaint, but only that he was acting under a good faith, reasonable belief that a violation existed." *See Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). Although this burden is not heavy, complaints talismanically invoking race do not necessarily suffice; rather, the plaintiff must connect the complaint to a plausible violation of Title VII.

As explained in connection with Ellis's discrimination claim, *see supra* note 4, Title VII prohibits discrimination only insofar as it results in an adverse employment action, that is, an action that effects a "materially adverse change in the terms and conditions of employment." *Galabya*, 202 F.3d at 640. Under no reasonable view of the law could the offer of a position that the plaintiff is free to refuse qualify as such an action. *Cf. King v. Jackson*, 487 F.3d 970, 973 (D.C. Cir. 2007) (unreasonable for employee to believe that failure to renew affirmative action plan violated Title VII); *Kunzler v. Cannon, USA*, 257 F. Supp. 2d 574, 582 (E.D.N.Y. 2003) (unreasonable for employee to believe that sexual harassment of customer violated Title VII). Thus, even assuming that Tricarico's statement that Ellis "look[ed] like [he] fit the [CIT] role best" could raise an inference of discriminatory animus (and the Court harbors serious doubts that it could), Ellis cannot establish a reasonable belief that the statement violated Title VII because it was made in connection with an offer that Ellis could and did refuse. Therefore, his "stereotyping"

statement does not qualify as protected activity and cannot support a claim of retaliation.[6]

## B. Other Federal Claims

Ellis's claims under §§ 1981 and 1983 are analyzed under the same substantive standards as Title VII claims. *See Patterson v. County of Oneida*, 375 F.3d 206, 225-27 (2d Cir. 2004) (§ 1981); *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir. 2004) (§ 1983). Consequently, those claims fail for the same reasons as Ellis's Title VII claims.

## C. State and City Claims

Having concluded that all of Ellis's federal claims fail, the Court must decide whether to exercise supplemental jurisdiction over his state and city claims. *See* 28 U.S.C. § 1367(c). Where all federal claims have been eliminated before trial, concerns of judicial economy, convenience, fairness and comity usually "point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003). Where, however, all claims are governed by the same standards, judicial economy is best served by exercising supplemental jurisdiction. *See Chambers v. Capital*

---

[6]In light of this conclusion, the Court need not address the effect of *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), on Ellis's retaliation claim. In *Burlington*, the Supreme Court held that Title VII's anti-retaliation provision prohibits a wider array of adverse employment actions than its anti-discrimination provision: "[T]he employer's actions must be harmful [only] to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 57. Lacking further guidance from the Supreme Court or the Second Circuit, district courts in the circuit are divided as to whether negative evaluations, standing alone, satisfy that standard. *Compare, e.g., Ragin v. East Ramapo Cent. Sch. Dist.*, 2010 WL 1326779, at *17 (S.D.N.Y. March 31, 2010) (concluding that they do not), *with Krinsky v. Abrams*, 2007 WL 1541369, at *11 (E.D.N.Y. May 25, 2007) (concluding that they do).

*Cities/ABC*, 851 F. Supp. 543, 545 (S.D.N.Y. 1994) ("Duplicative litigation at multiple levels of government involving the same facts [is] contrary to the objectives of the Supplemental Jurisdiction Act and the public interest.").

At oral argument, Ellis's counsel argued that a recent New York case heralds a definition of "adverse employment action" under the NYCHRL's (but not the NYSHRL's) anti-retaliation provision that is broader than *Burlington Northern*'s definition for federal retaliation claims. *See Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 34 n.12 (1st Dep't 2009) ("[I]t cannot be assumed that cases citing *Burlington* adequately convey the full import of the [NYCHRL] standard . . . ."). The Court's disposition of Ellis's federal claims does not, however, rely on that element, and the city, state and federal analyses are the same in all other respects. Accordingly, the Court exercises supplemental jurisdiction over Ellis's state and city claims, and grants summary judgment on them for the reasons set forth above.

## CONCLUSION

Defendants' motion for summary judgment is granted. Ellis's complaint is dismissed in its entirety.

**SO ORDERED.**

s/Frederic Block

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
July 16, 2010